IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION


                                    *

UNITED STATES OF AMERICA

                                    *

                                    *

        v.                              CRIMINAL NO.: WDQ-09-0361

                                    *

                                    *

MAURICE SPRIGGS

                                    *

                                    *

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

    Maurice Spriggs is charged with (1) carjacking in violation

of 18 U.S.C. § 2119; (2) using a handgun during a crime of

violence in violation of 18 U.S.C. § 924; and (3) being a felon

in possession of a firearm in violation of 18 U.S.C. § 922(g).

Spriggs moved to suppress evidence seized during an automobile

stop and to exclude pretrial and in-court identification

evidence.  A hearing was held on March 8, 2010.  For the

following reasons, the motions were denied.

I.    Motion to Suppress Tangible Evidence

        A. Background

    On February 1, 2009 at 6:30 p.m.--while driving his 2005

gold Chevrolet Malibu in Baltimore--Andre Lamont Mitchell was

1

approached by two men who asked for a ride in exchange for money. Gov't Ex. 4 (Feb. 4, 2010 Tr. 2-3).  Mitchell recognized one of the men--Spriggs--but knew him only as "Royce."  *Id*. at 4.  Mitchell agreed to give the men a ride, and shortly after allowing them into his car, they robbed him at gun point.  *Id*. at 3.  Mitchell was forced out of the car, and the men drove away.  *Id*. at 4.

Mitchell went to a nearby pharmacy and called police.  *Id*. Baltimore Police Detective Sergeant William Gerczak, who testified at the suppression hearing, was patrolling the area in an unmarked car with his partner, Detective Ciotti.  Mot. Hr'g Tr. 3-4, Mar. 8, 2010.  After hearing about the carjacking over their police radio, the detectives went to the scene.  *Id*. 5-6. They learned the make, model and license plate number of the stolen car and received a description of the suspects.  *Id*. 5-6. They drove around the neighborhood in search of the car.  *Id*. 7.

At around 10:00 p.m. that evening, the detectives spotted a car matching the description they had received and bearing the license plate number that had been reported.  *Id*. 7-8.  The car was being driven by a man who matched the suspect description--Spriggs--about 12 blocks from the scene of the carjacking.  *Id*. Gerczak requested backup, and members of the Baltimore Police Department blockaded the street onto which Spriggs had turned.

*Id.* 10.   Gerczak blocked the Malibu from behind to prevent
Spriggs from backing up.   *Id.*   He approached the driver's side
and ordered Spriggs to place his hands on the steering wheel.
*Id.* 11.   Instead, Spriggs reached inside his clothing.   *Id.* 12.
Fearing that Spriggs was reaching for a weapon, Gerczak forcibly
removed him from the car and frisked him.   *Id.* 12-13.   Gerczak
felt a handgun in Spriggs's jacket pocket.   *Id.* 14.   He reached
into Spriggs's jacket and recovered a loaded handgun.   *Id.*

    B.  Analysis

Spriggs moves to suppress the gun because, he argues, (1)
the initial stop was not supported by reasonable suspicion and
(2) the search of his person was not supported by probable
cause.

    1.  Stop

An officer may stop and briefly detain a person for
investigative purposes when there is "reasonable suspicion" that
"criminal activity is afoot." *Terry v. Ohio*, 392 U.S. 1, 30
(1968).[1]  Because the intrusion created by an investigative stop

---

[1] Whether there is reasonable suspicion depends on the totality
of the circumstances, including information known to the officer
and any reasonable inferences to be drawn at the time of the
stop.  *United States v. Arvizu*, 534 U.S. 266 (2002). Reasonable
suspicion is a "commonsensical proposition . . . crediting the
practical experience of officers who observe on a daily basis
what transpires on the street." *United States v. Lender*, 985
F.2d 151, 154 (4th Cir. 1993).

is minimal, the reasonable suspicion standard is not onerous. *United States v. McCoy*, 513 F.3d 405, 412-13 (4th Cir. 2008).

Here, the arresting officers had received descriptions of the make, model and license plate number of the stolen car and the suspects.  They (1) stopped a car matching the description, (2) being driven by a suspect matching the description, (3) about one mile from the crime scene, and (4) less than four hours after the theft.  Under the totality of the circumstances, the officers had reasonable suspicion of criminal activity.

### 2. Recovery of the Gun

With reasonable suspicion to stop a suspect, and reasonable belief the suspect may be armed and dangerous, an officer may conduct a frisk and limited search for weapons.  *See United States v. Hensley*, 469 U.S. 221, 226-28 (1985); *United States v. Brockington*, 849 F.2d 872, 876 (4th Cir. 1988).  Under the "plain feel doctrine," a weapon discovered during a frisk may be seized if its "contour or mass makes its identity immediately apparent."  *See Minnesota v. Dickerson*, 508 U.S. 366, 373-75 (1993).

Since the victim of the carjacking had reported being robbed at gunpoint, Gerczak reasonably believed that Spriggs was armed and dangerous.  That Spriggs reached inside his clothing as Gerczak approached suggested that he was armed.  Accordingly,

4

a frisk for weapons was permitted.  Because Gerczak felt a gun through Spriggs's jacket, the subsequent search of Spriggs was permitted under the plain feel doctrine.

The stop and frisk of Spriggs were proper under *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny; thus, the search of Spriggs did not violate his Fourth Amendment rights.  Accordingly, his motion to suppress was denied.

II.  Motion to Suppress Identification

A.  Background

On February 2, 2009--the day after the carjacking--Mitchell met with Sergeant David Dull and Detective Stambaugh of the Baltimore Police Department, who showed him a photo array with six pictures of young African American men, including Spriggs. Hr'g Tr. 31, 40-41; Gov't Ex. 2.  All the men had short haircuts and facial hair.  *Id.*  Before showing the array to Mitchell, Dull read him a statement explaining, *inter alia*, that the array "may or may not contain a picture of the subject in connection with this investigation."  Hr'g Tr. 32; Gov't Ex. 3.   Dull then placed the array face-down in front of Mitchell, and told him to turn it over when ready.  Hr'g Tr. 33.  Mitchell did so, and identified Spriggs as the man who had carjacked him.  *Id.* at 34. Mitchell signed and dated the area above Spriggs's picture and wrote a statement indicating that the person pictured had

participated in the carjacking.  *Id*. at 34-35; Gov't Exs. 2, 3.
Neither Dull nor Stambaugh said or did anything to influence
Mitchell's choice or his statement.  Hr'g Tr. 34-35; Gov't Ex.
4.

   B.  Analysis

   Spriggs moves to exclude (1) evidence of Mitchell's photo-
array identification and (2) any in-court identification of
Spriggs by Mitchell.

   1.  Evidence of Pretrial Identification

   To exclude evidence of the pretrial identification, Spriggs
must first show that the identification procedure was
"impermissibly suggestive."  *Manson v. Braithwaite*, 432 U.S. 98,
114 (1977).  If he makes this showing, the Court must then
determine whether the pretrial identification was nevertheless
reliable under the totality of the circumstances.  *Id*. at 114-
17.

   Spriggs has not shown that the photo-array procedure was
impermissibly suggestive.[2]  Mitchell was read a statement
explaining that the array may or may not contain the suspect; he
was shown a standard six-picture array; all six pictures were of

---

[2] In a photocopy of the array, the background of Spriggs's photo
appears to be lighter than the other photos.  In the original,
introduced at the hearing, the background of the Spriggs photo
is consistent with the other photos.

young African American men generally similar to Spriggs, with short haircuts and facial hair; and Dull and Stambaugh did not say or do anything to influence Spriggs's choice.  Accordingly, Spriggs's motion to exclude evidence of Mitchell's pretrial identification was denied.[3]

    2.  In-Court Identification

    An in-court identification is permissible only if it is untainted by an improper pretrial identification.  *United States v. Crews*, 445 U.S. 463, 471-73 (1980).  The defendant must show an impermissibly suggestive pretrial identification.  *See id.* If he does, the Government must prove by clear and convincing evidence that the in-court identification is "based upon observations of the suspect other than [the photo array]." *United States v. Burgos*, 55 F.3d 933, 942 (4th Cir. 1995).

    Here, because Spriggs has not shown that the pretrial identification was impermissibly suggestive, his motion to exclude Mitchell's in-court identification was denied.

---

[3] Even assuming, without finding, that the photo spread was impermissibly suggestive, Mitchell's acquaintance with Spriggs before the carjacking, *see* Feb. 4, 2010 Tr. at 4, makes his identification reliable.

III. Conclusion

     For the reasons stated above, Spriggs's motion to suppress tangible evidence and to exclude Mitchell's pretrial and in-court identifications were denied.


March 10, 2010                          _____/s/_____
Date                                    William D. Quarles, Jr.
                                        United States District Judge