IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

CRIMINAL No. ELH-09-0361

MAURICE SPRIGGS,
*Defendant.*

**MEMORANDUM OPINION**

In an Indictment filed on June 25, 2009 (ECF 1), defendant Maurice Spriggs was charged

with the commission of carjacking on February 1, 2009, by use of "force, violence and

intimidation," in violation of 18 U.S.C. § 2119 (Count One); using, carrying and brandishing a

firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Two)[1]; and

possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Three).[2]

Defendant proceeded to a jury trial that began on March 8, 2010, before Judge William D. Quarles,

Jr., to whom the case was then assigned. ECF 41. On March 11, 2010, the jury found defendant

guilty of all charges. ECF 51 (Verdict Form).[3]

---

[1] The "crime of violence" for the § 924(c) offense in Count Two is the carjacking in Count
One.

[2] Defendant was also charged with aiding and abetting as to Counts One and Two, under
18 U.S.C. § 2.

[3] The case was reassigned to me on June 27, 2016, due to Judge Quarles's retirement. *See*
Docket.

At sentencing on July 2, 2010 (ECF 57), defendant was found to be a career offender and an Armed Career Criminal. Judge Quarles sentenced defendant to a total term of 444 months of incarceration (37 years). ECF 59 (Judgment).[4]

Defendant, who is now self-represented, has filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF 127. He contends that an extraordinary and compelling reason for his release exists because his mother has died, leaving his elderly father "home alone." *Id.* at 5. Defendant also complains about the length of his sentence, and points generally to his rehabilitation efforts. *Id.* at 5–6.

The motion is supported by four exhibits: (1) the funeral program for defendant's mother, Lillian Delores Spriggs (ECF 127-1); (2) a letter to defendant from his father, Stanley Spriggs (ECF 127-2); (3) a Bureau of Prisons "Individualized Needs Plan – Program Review" (ECF 127-3); and (4) numerous course completion certificates, as well as a certificate indicating that defendant has obtained his GED (ECF 127-4). In addition, defendant's father submitted a letter to the Court. ECF 131. He explains that he is in his seventies, has prostate cancer, lost his wife of forty-nine years in 2021, and lives alone.

The government opposes the motion. ECF 135.

In response, Spriggs submitted correspondence (ECF 136) asking the Court to consider the United States Supreme Court's decision in "Erlinger." *Id.*; *see Erlinger v. United States*, 602 U.S. 821 (2024). According to defendant, *Erlinger* "affirmed" that he should not have been sentenced "so harshly." *Id.* The government responded. ECF 139. Defendant also submitted additional correspondence, dated October 19, 2024. ECF 140.

---

[4] The Presentence Report (ECF 116) indicates that defendant was held in pretrial federal custody since his arrest on February 1, 2009. *Id.* at 1.

I shall construe ECF 127, ECF 136, and ECF 140 collectively as the "Motion." And, I shall construe the government's submissions (ECF 135, ECF 139) collectively as the Opposition.

The Office of the Federal Public Defender has declined to supplement the Motion. ECF 129. Nor will it seek appointment of counsel for defendant. *Id.*

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion, in part. In particular, I shall reduce defendant's total sentence from 444 months (37 years) to 300 months (25 years) of incarceration with credit for time served since February 1, 2009.

## I. Factual Background and Procedural History[5]

According to the Presentence Report (ECF 116, "PSR"),[6] at about 6:30 p.m. on February 1, 2009, members of the Baltimore City Police Department ("BPD") received a call for a carjacking in the parking lot of a Rite Aid store in Baltimore. *Id.* ¶ 7. The carjacking victim, Andre Lamont Mitchell, "explained that he had been driving near the Rite Aid when he was approached by two black males who asked him for a ride in exchange for money." *Id.* Mitchell

---

[5] Section I is drawn from my Memorandum of April 2, 2020, denying defendant's second post-conviction petition (ECF 99); the Memorandum Opinion of Judge Quarles (ECF 89), denying defendant's first § 2255 petition (ECF 83); and the Presentence Report (ECF 116).

[6] The PSR initially was not docketed. But, in 2020, in connection with defendant's post-conviction petition (ECF 99), I located it in the Chambers file of Judge Quarles and submitted it for docketing.

recognized defendant, known to him as "Royce." *Id.* Although Mitchell did not recognize the other man (*id.*), he agreed to give the men a ride. *Id.* ¶ 8.[7]

Defendant sat in the front passenger seat of Mitchell's vehicle and the other man sat in the back seat. *Id.* Shortly after entering the car, defendant pointed a handgun at Mitchell and demanded his money. *Id.* The man in the back seat also brandished a firearm. *Id.* Mitchell gave defendant his money and quickly exited the vehicle. *Id.* Defendant and the other man "drove away" in Mitchell's vehicle—a gold 2006 Chevrolet Malibu. *Id.* Mitchell entered the Rite Aid and called 911. *Id.*

The police broadcasted "an alert over the [BPD] city-wide radio frequency for two black males in a gold Chevrolet Malibu, bearing license plate number, 1CFH28." *Id.* ¶ 9. At approximately 10:30 p.m. that night, two BPD officers spotted Mitchell's car "being driven by a black male . . . approximately one mile away from the Rite Aid where the car was stolen." *Id.* The officers stopped the car. *Id.*

Officers approached the vehicle and determined that defendant was the sole occupant. *Id.* ¶ 10. According to the PSR, "[t]he officers yelled at the defendant multiple times to put his hands on the steering wheel of the car." *Id.* The officers "opened the door of the Malibu, removed the defendant, and arrested him. Officers then searched the defendant and recovered a loaded Clerke, model CF32-200, .32 caliber revolver . . . from the inside left pocket of the defendant's jacket." *Id.*

Mitchell met with members of the BPD the day after the carjacking. He was shown a photo array containing six photographs. *Id.* ¶ 11. Mitchell "examined the photo array and identified

---

[7] The identity of defendant's accomplice was unknown to the government. *See* ECF 77 (Sentencing Transcript), at 12.

defendant Maurice Spriggs as the person he knew as 'Royce,' who had carjacked him the previous evening." *Id.*

At trial, a firearms examiner testified that "she test-fired the Clerke revolver . . . and that it was capable of expelling a projectile" and that it "was manufactured outside the state of Maryland, thereby affecting interstate commerce." *Id.* ¶ 12. A representative from General Motors Company "testified at trial that the victim's Chevrolet Malibu . . . was manufactured in Illinois, and therefore, [the vehicle] had been transported, shipped and received in interstate commerce prior to being stolen in Baltimore, Maryland." *Id.*

As noted, the jury found defendant guilty of all three counts (ECF 51). Count One, the carjacking offense, carried a maximum term of imprisonment of fifteen years, pursuant to 18 U.S.C. § 2119. ECF 116, ¶ 91. Count Two, brandishing a firearm in relation to a crime of violence, carried a mandatory minimum sentence of seven years, consecutive, with a maximum of life imprisonment, pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). *Id.* At the time, Count Three, the offense of felon in possession of a firearm under 18 U.S.C. § 922(g), carried a maximum sentence of ten years of imprisonment, unless the defendant was found to be an armed career criminal.[8] In that circumstance, the defendant would face a mandatory minimum term of fifteen years of imprisonment, with a maximum of life, pursuant to 18 U.S.C. § 924(e). *Id.* Therefore, if defendant qualified as an armed career criminal, he would face a mandatory minimum sentence of 264 months (22 years), *i.e.*, fifteen years for Count Three and seven years, consecutive, for Count Two. *See* ECF 77 (Sentencing Transcript), at 11.

---

[8] Under current law, for a defendant who is not an armed career criminal, the maximum sentence under 18 U.S.C. § 922(g)(1) has increased to fifteen years of imprisonment.

As noted, sentencing was held on July 2, 2010.  ECF 57.  Judge Quarles generally adopted the calculations of the advisory sentencing guidelines ("U.S.S.G." or "Guidelines"), as set forth in the PSR.  *See* ECF 60 (Statement of Reasons), at 1.[9]

According to the PSR, Counts One and Three were grouped for purposes of sentencing, pursuant to U.S.S.G. § 3D1.2(b).  ECF 116, ¶¶ 17, 18.  But, Count Two "requires a term of imprisonment to be imposed consecutively to any other terms of imprisonment, and is excluded from the grouping rules."  *Id.* ¶ 19 (citing U.S.S.G. § 2K2.4; U.S.S.G. § 3D1.1(b)(1)).

As to Counts One and Three, the base offense level was 20, pursuant to U.S.S.G. § 2B3.1(a).  ECF 116, ¶ 20.  Because the offense involved carjacking, two levels were added, pursuant to U.S.S.G. § 2B3.1(b)(5).  *Id.* ¶ 21.[10]  Because defendant had four prior felony controlled substance offenses, he was determined to be a career offender within the meaning of U.S.S.G. § 4B1.1.  *Id.* ¶ 29.  That would have yielded an offense level of 29.  *Id.*  However, based on those same felony offenses, defendant was also determined to be an armed career criminal within the meaning of U.S.S.G. § 4B1.4 and 18 U.S.C. § 924(e).  *Id.* ¶ 30.  Defendant's status as an armed career criminal resulted in an enhanced offense level of 34.  *Id.*

As to Count Two, the PSR states, *id.* ¶ 38: "The [Guidelines] for violation of Title 18, U.S.C. § 924(c) is found in U.S.S.G. § 2K2.4(b) which provides, if the defendant, whether or not convicted of another crime, was convicted under [§ 924(c)], the term of imprisonment is that

---

[9] The PSR indicated that defendant had five prior felony drug convictions.  ECF 116, ¶¶ 29, 30.  But, at sentencing, the parties agreed that the offense referenced in ¶ 47 of the PSR was not a felony.  *See* ECF 77 at 3.

[10] Although defendant brandished a firearm during the commission of the carjacking, no offense levels were added for Counts One and Three, because defendant was also convicted of Count Two, under 18 U.S.C. § 924(c).  ECF 116, ¶ 22 (citing Application Note 4 in the Commentary to U.S.S.G. § 2K2.4).

required by statute. In this case it is seven years." And, the statute requires the sentence to run consecutive to any other term of imprisonment.

As the PSR reflects, defendant has a very lengthy criminal history, dating to the age of eighteen. *See* ECF 116, ¶¶ 41, 43, 45, 47. Many of his offenses are drug related.

In 1995, defendant pleaded guilty to possession of CDS. *Id.* ¶ 41. He was sentenced to two years of incarceration, all suspended, and three years of probation. *Id.* Defendant violated his probation in April 1996, and was sentenced to eighteen months of incarceration. *Id.*

In May 1996, defendant was convicted of CDS possession. *Id.* ¶¶ 43, 44. The offense occurred in December 1995. *Id.* ¶ 43. He was ordered to pay a $50 fine. *Id.* ¶ 44.

In November 1996, Spriggs was again convicted of CDS possession. *Id.* ¶¶ 47, 48.[11] The offense occurred in March 1996. *Id.* ¶ 47. He was sentenced to three years of incarceration, with two years, six months, and seven days (time served) suspended. *Id.* Defendant also received three years of probation. *Id.* Defendant subsequently violated his probation and was sentenced to one year of incarceration. *Id.*

Defendant pleaded guilty to possession of cocaine in 1997. *Id.* ¶¶ 49, 50. He received a nine-month sentence. *Id.* ¶ 49.

Then, in October 1999, defendant pleaded guilty to distribution of cocaine. *Id.* ¶ 53. The offense occurred in December 1998. *Id.* ¶ 55. Spriggs was sentenced to seven years of

---

[11] The PSR states that defendant pleaded guilty in the Circuit Court for Baltimore City, case no. 296149031, to possession with intent to distribute. ECF 116, ¶ 47. However, as defense counsel argued, this was actually a conviction for possession, not distribution. ECF 77 at 3; *see also* ECF 55 (Defense Sentencing Memorandum), at 3. The government agreed. ECF 77 at 3; *see also* ECF 56 (Government Sentencing Memorandum), at 1 n.1. Judge Quarles agreed, stating: "[T]he presentence report will be corrected to reflect that the actual conviction was to the possession; not to the felony narcotics offense." ECF 77 at 3. The PSR in Judge Quarles's file has a handwritten notation indicating that the conviction referenced in ¶ 47 was for possession of CDS. ECF 116 at 9.

incarceration, with six years suspended, and three years of probation. *Id.* ¶ 53. Defendant was released in May 2000. *Id.* But, probation was revoked in October 2001, and Spriggs was sentenced to six years of incarceration, consecutive to any sentence he was serving. *Id.* He was released in August 2007. *Id.* Then, defendant's parole was revoked in July 2008. *Id.* ¶ 54. He was released in October 2008. *Id.*

In the interim, in October 2000, shortly after defendant's release in May 2000, he pled guilty to possession with intent to distribute cocaine. *Id.* ¶¶ 56, 58. The offense occurred in August 1999. *Id.* ¶ 56. Defendant received a sentence of six years, with five years, nine months, and eight days (time served) suspended, and three years of probation. *Id.* Probation was revoked on October 15, 2001, and defendant was sentenced to the previously suspended time, concurrent with his six-year sentence for the drug distribution offense in 1999. *Id.*

Spriggs pleaded guilty on April 2, 2001, to the offense of possession with intent to distribute heroin. *Id.* ¶¶ 59, 61. The offense occurred in August 2000. *Id.* ¶ 61. He was sentenced to three years of incarceration, dating from December 16, 2000. *Id.* ¶ 59.

Also on April 2, 2001, defendant pleaded guilty to the offense of possession with intent to distribute cocaine. *Id.* ¶¶ 65, 67. The offense occurred in December 2000. *Id.* ¶ 67. He was sentenced to three years of incarceration, to run concurrent with the sentence imposed on the same date for possession with intent to distribute heroin. *Id.* ¶ 65.

Spriggs also has several non-drug related convictions. In 1996, he was convicted of urinating in public and was ordered to pay court costs of $50. *Id.* ¶ 45. In 1997, defendant pleaded guilty to escaping from confinement and was sentenced to three months of incarceration. *Id.* ¶¶ 51, 52.

In 2001, defendant was convicted of failing to stop at a red light, attempting to elude police by failing to stop his vehicle, and failing to remain at the scene of an accident involving bodily injury. *Id.* ¶¶ 62, 64. He received a sentence of four months. *Id.* ¶ 62.

Spriggs was found guilty of first-degree escape in 2007. *Id.* ¶¶ 68, 69. He was sentenced to two years of incarceration, with one year and eight months suspended, and five years of probation. *Id.* ¶ 68.

In 2008, defendant was found guilty of failing to obey a traffic control device, attempting to elude police by failing to stop, driving without a license, driving on a revoked license, and driving after his license was suspended/revoked. *Id.* ¶¶ 70, 72. Spriggs received a total sentence of one year of imprisonment, and a $90 fine. *Id.* ¶ 70.

Defendant's many convictions resulted in a criminal history score of 24 points. *Id.* ¶ 73. Because defendant was on probation for the 2007 escape offense and on "mandatory release supervision" in multiple cases at the time of his offenses in the instant case, two points were added, pursuant to U.S.S.G. § 4A1.1(d). *Id.* ¶ 74. And, because defendant committed the instant offenses less than two years following his release in multiple cases, one point was added, pursuant to U.S.S.G. § 4A1.1(e). *Id.* ¶ 75.[12] Thus, defendant had 27 criminal history points, placing him in a criminal history category of VI. *Id.* ¶ 76. Defendant's status as a career offender and armed career criminal also placed him in a criminal history category of VI. *Id.* ¶¶ 77–79. And, even without

---

[12] As part of the 2010 Amendments to the Guidelines, so-called "recency points" were eliminated, effective November 1, 2010. *See* U.S.S.G. § 4A1.1 (2010 Amendments, Editor's and Revisor's Notes). But, this change in the law would not alter defendant's criminal history category of VI.

the three additional points, a criminal history score of 24 points results in a criminal history category of VI.[13]

Based on a total offense level of 34 and a criminal history category of VI, defendant's Guidelines called for a sentence ranging from 360 months to life imprisonment. *Id.* ¶¶ 36, 92; *see also* ECF 60 at 1. And, as noted, Spriggs faced a mandatory minimum sentence of 264 months (22 years) as to Counts Two and Three. ECF 116, ¶ 91; *see also* ECF 77 at 11.

At sentencing on July 2, 2010 (ECF 57), defendant was 32 years of age. ECF 116 at 1. As to Count One, Judge Quarles sentenced defendant to the maximum term, *i.e.*, 180 months. The Court also sentenced defendant to 180 months, consecutive, as to Count Three. And, for Count Two, defendant received a sentence of 84 months, consecutive. Thus, defendant received a total sentence of 444 months (37 years) of imprisonment. ECF 59.

On November 4, 2011, defendant's convictions and sentence were affirmed on direct appeal by the United States Court of Appeals for the Fourth Circuit. *United States v. Spriggs*, 452 F. App'x 271 (4th Cir. 2011) (per curiam); *see* ECF 78. The Mandate issued on November 22, 2011. ECF 79.

Defendant filed a post-conviction petition on April 8, 2013 (ECF 83), which Judge Quarles denied. ECF 89 (Memorandum Opinion); ECF 90 (Order). Defendant's appeal was dismissed by the Fourth Circuit. ECF 94 (Judgment); ECF 95 (Mandate); *see United States v. Spriggs*, 587 F. App'x 759 (4th Cir. 2014) (per curiam).

_____

[13] Today, pursuant to Amendment 821 to the Guidelines, defendant would only be subject to one status point. *See* Amendment 821, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821; *see also* U.S.S.G. § 4A1.1(e). Nonetheless, defendant would remain in a criminal history category of VI based on the number of points, as well as his status as a career offender and his status as an armed career criminal. ECF 116, ¶¶ 73, 77, 78–79.

By Order of June 27, 2016 (ECF 98), the United States Court of Appeals for the Fourth Circuit authorized Spriggs to file a successive § 2255 petition. *See* ECF 98-1. He did so on July 19, 2016. ECF 99. Defendant claimed that, in light of *United States v. Johnson*, 576 U.S. 591 (2015), his sentence was invalid because the crime of aiding and abetting a carjacking (18 U.S.C. §§ 2, 2119) is not a crime of violence. ECF 99 at 4. Pursuant to a district-wide Standing Order, the government sought a stay, pending anticipated rulings by the Supreme Court that could affect the outcome of the case. ECF 102. I granted the government's request for a stay. ECF 103.

The stay was lifted on October 4, 2019. ECF 112. By Memorandum (ECF 117) and Order (ECF 118) of April 2, 2020, I denied defendant's post-conviction petition. Defendant's appeal (ECF 120) was dismissed by the Fourth Circuit. ECF 123 (Judgment); ECF 124 (Mandate); *see United States v. Spriggs*, 825 F. App'x 125 (4th Cir. 2020) (per curiam). Spriggs filed a petition for writ of certiorari to the United States Supreme Court (ECF 125), which was denied. ECF 126; *Spriggs v. United States*, 141 S. Ct. 2547 (2021).

Defendant is now 47 years of age. *See* ECF 116 at 1. He is presently incarcerated at FCI Hazelton in West Virginia. https://www.bop.gov/inmateloc/ (search by name) (last accessed December 6, 2024). Defendant has served approximately 190 months of his 444-month sentence, or approximately 43 percent. He has a projected release date of November 12, 2040. https://www.bop.gov/inmateloc/.

## II. Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F.

4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at \*3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see, e.g., Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at \*1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020). In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts. The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step. Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with

applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a

defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer,

§ 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[14]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by

---

[14] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in

18

exercising its discretion).  Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).  As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500).  The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor."  *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021).  And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain.  *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis."  But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion.  *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case."  *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190).  And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on

erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661. According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

#### A.

In the Motion, defendant states that he filed a request for compassionate release with the Warden on August 4, 2023. ECF 127 at 3. The government does not contest administrative exhaustion. Accordingly, I am satisfied that defendant has established administrative exhaustion. *See* 18 U.S.C. § 3582(c)(1)(A); *Muhammad*, 16 F.4th at 129–30 (stating that because the administrative exhaustion requirement is non-jurisdictional, it can be waived if not timely raised by the government).

**B.**

**1. Family Circumstances**

Defendant contends that he has established an extraordinary and compelling reason for compassionate release because his mother has died, leaving his elderly father "home alone." ECF 127 at 5. And, as indicated, defendant's father, who is in his mid seventies, has been diagnosed with prostate cancer. ECF 131.

The government asserts, ECF 135 at 3: "Although the passing of the Defendant's mother and the aging of his father are undeniably distressing, these circumstances do not meet the stringent criteria for 'extraordinary and compelling' reasons requires for early release." The government observes, *id.* at 4: ". . . Defendant offers no evidence or details to suggest that his father is incapacitated or unable to care for himself. Nor does he demonstrate that other relatives, neighbors, friends, or social services are unable to assist his father if needed." The government adds, *id.* at 4–5: "Without more supporting information to show defendant's father is without capacity and that there is no one else to care for him, the Defendant does not clear the high bar of establishing an extraordinary and compelling reason for release."

U.S.S.G. § 1B1.13(b)(3), titled "Family Circumstances of the Defendant," provides an extraordinary and compelling reason for compassionate release in the following circumstance (emphasis added): "(C) The *incapacitation* of the defendant's parent when the defendant would be the *only available caregiver* for the parent."

There is no evidence that defendant's father is incapacitated. Nor is there any evidence that defendant is the only available caregiver.

In a letter from defendant's father to the Court, filed January 12, 2024, defendant's father stated that he was 73 years old and living by himself. ECF 131 at 1. He also stated that he was

diagnosed with prostate cancer in December 2020, and vaguely referenced "all the problems" he was having.  *Id.*  But, "incapacitation" requires more than a cancer diagnosis or elderly status. And, in October 2024, Spriggs stated that his father was 74 years old and "still alive and well . . . ." ECF 140 at 2.

Even if defendant's father were incapacitated, there is no evidence that defendant is the "only available caregiver" for his father.  U.S.S.G. § 1B1.13(b)(3)(C).  Although defendant has presented evidence that his mother died, ECF 127-1, ECF 131 at 1, and states that he is his parents' only child, ECF 127 at 5, Spriggs does not argue that there is no one else to care for or assist his father.

The Court understands defendant's desire to be available for his father.  Nonetheless, I must construe the words of the Guidelines in accordance with their ordinary meaning.  *See United States v. Boler*, 115 F.4th 316, 323 (4th Cir. 2024); *United States v. Haas*, 986 F.3d 467, 480 (4th Cir. 2021).  Therefore, I conclude that defendant has failed to establish an extraordinary and compelling reason for his release grounded in U.S.S.G. § 1B1.13(b)(3)(C).

## 2.  Length of Sentence

In the Motion, defendant states, ECF 127 at 5: "Not to pacify my crime but people that have commit[ted] murder have less time th[a]n me."

The government counters, ECF 135 at 7: "Defendant's complaint that his sentence is longer than those imposed on some defendants convicted of murder is not a valid basis for compassionate release."  The government also observes that every defendant's sentence "is based on the specific facts and circumstances of their case," and the "fact that other defendants convicted of different crimes may have received shorter sentences is not a basis for reducing Defendant's sentence . . . ." *Id.*  Further, the government contends: "Defendant's sentence was driven in large part by the

mandatory consecutive penalties for his § 924(c) conviction and his status as an armed career criminal under 18 U.S.C. § 924(e)." *Id.*

U.S.S.G. § 1B1.13(b)(6), titled "Unusually Long Sentence," provides:

If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(c), titled "Limitation on Changes in Law," is also noteworthy. It provides: "Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement."

In order for U.S.S.G. § 1B1.13(b)(6) to apply here, Spriggs must demonstrate that: (1) he "received an unusually long sentence"; (2) "has served at least 10 years" of that sentence; and (3) a change in the law produces "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed . . . ."

Defendant received a sentence of thirty-seven years of imprisonment in connection with an armed carjacking. He has served over fifteen years of his sentence. Thus, he satisfies the first and second criteria. The question, then, is whether he satisfies the third requirement.

The federal carjacking statute, 18 U.S.C. § 2119, carries a fifteen-year maximum term of imprisonment. That is the sentence defendant received for Count One. ECF 59. And, there is no relevant change in the law as it pertains to defendant's carjacking conviction under Count One.

As to Count Two, 18 U.S.C. § 924(c)(1)(A) provides, in pertinent part:

> . . . any person who, during and in relation to any crime of violence . . . (including a crime of violence . . . that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .
>
> > (i) be sentenced to a term of imprisonment of not less than 5 years;
> > (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years . . . .

The jury expressly found that defendant brandished a firearm in furtherance of the carjacking. ECF 51. Thus, if sentenced today, defendant would remain subject to the seven-year mandatory minimum sentence as to Count Two, consecutive to any other sentence imposed.

Count Three charged defendant with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). Under that statute, it is unlawful for any person to posses a firearm in or affecting interstate or foreign commerce if he or she has "been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year . . . ." 18 U.S.C. § 922(g). There is no dispute that defendant has been convicted of numerous qualifying crimes.

Currently, a defendant convicted under 18 U.S.C. § 922(g) faces a fifteen-year maximum term of imprisonment. 18 U.S.C. 924(a)(8). But, at the time Spriggs was sentenced, the statute provided for a ten-year maximum term of imprisonment, unless the defendant qualified as an armed career criminal. *See* 18 U.S.C. § 924(a)(2) (effective October 6, 2006, through December 20, 2018). Today, and at the time defendant was sentenced, under the Armed Career Criminal Act ("ACCA"), if a § 922(g) offender (1) has previously been convicted of three violent felonies or three serious drug offenses; and (2) those three violent felonies or serious drug offenses were committed on "occasions different from one another," the defendant faces a mandatory minimum term of imprisonment of fifteen years, with a maximum of life imprisonment. 18 U.S.C. § 924(e)(1).

As explained, the Court determined that defendant qualified as an armed career criminal based on four prior felony drug distribution offenses. ECF 116, ¶ 78. And, Judge Quarles imposed the mandatory minimum fifteen-year sentence. ECF 59. Although the law did not require the Court to impose a consecutive sentence for Count Three, Judge Quarles did so.

In the Motion, Spriggs states: "[I]f there is any new case law or change of law could it please be instituted." ECF 127 at 5. He relies on *Erlinger v. United States*, 602 U.S. 821 (2024). ECF 136.

In *Erlinger*, the defendant was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). *Id.* At the time, a conviction for that offense carried a maximum sentence of ten years. The government also charged the defendant under the ACCA. *Id.* The Supreme Court explained that, under the ACCA, the defendant could face a mandatory minimum sentence of fifteen years, with a maximum of life, if the defendant had three or more prior and distinct convictions for violent felonies or serious drug offenses. *Id.*

The defendant pleaded guilty to a violation of 18 U.S.C. § 922(g). *Id.* at 826. The sentencing judge then concluded that it was "more likely than not that [the defendant's] past included three ACCA-qualifying offenses committed on three different occasions." *Id.* at 826 (citation omitted). Accordingly, the defendant was sentenced to the mandatory minimum term of fifteen years of incarceration. *Id.*

Subsequently, the Seventh Circuit issued decisions in *United States v. Glispie*, 978 F.3d 502 (7th Cir. 2020), and *United States v. De La Torre*, 940 F.3d 938, 952 (7th Cir. 2019), which applied directly to Erlinger's case. The *Glispie* Court ruled that Illinois residential burglary is not a violent felony under the ACCA, and the *De La Torre* Court concluded that Indiana methamphetamine convictions are not serious drug offenses. *See United States v. Erlinger*, 77

F.4th 617, 619 (7th Cir.), *vacated and remanded*, 602 U.S. 821 (2024).  Because those decisions

left Erlinger with only one qualifying prior conviction, not the three the ACCA requires, the district

court vacated Erlinger's sentence and held a resentencing hearing.  *Erlinger*, 602 U.S. at 826.

On resentencing, the government again pursued a 15-year ACCA sentence.  *Id.*  But, the

government pointed to a new set of prior convictions arising from burglaries the defendant had

committed in Indiana.  *Id.*  "As the government told it, within a span of days [, the defendant]

burglarized a pizza shop, a sporting goods store, and two restaurants.  Because each of these

burglaries occurred on different occasions, the government submitted, each could serve as an

ACCA predicate and collectively they could support an ACCA sentence."  *Id.* at 826–27 (internal

citations omitted).

The defendant disagreed, contending that the "burglaries had not occurred on four separate

occasions but during a single criminal episode, all of which meant he still lacked the three prior

offenses ACCA requires."  *Id.* at 827.  And, the defendant argued that the question whether he

committed the burglaries "during a single episode or on distinct occasions" was a factual question

which, pursuant to the Fifth and Sixth Amendment to the Constitution, required the finding to be

made by the jury, beyond a reasonable doubt.  *Id.*

The district court agreed with the government and reimposed a fifteen-year mandatory

minimum sentence, pursuant to the ACCA.  *Id.*  The Seventh Circuit affirmed, and the defendant

sought certiorari to the United States Supreme Court.  *Id.* at 828.

The issue in the Supreme Court was whether, for purposes of the ACCA, "a judge may

decide that a defendant's past offenses were committed on separate occasions under a

preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a

unanimous jury to make that determination beyond a reasonable doubt."  *Id.* at 825.

Relying on cases such as *Apprendi v. New Jersey*, 430 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013) (plurality decision), the Supreme Court explained: "Only a jury may find 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Id.* at 833 (quoting *Apprendi*, 430 U.S. at 490). Further, the Court stated, *Erlinger*, 602 U.S. at 834: "Judges may not assume the jury's factfinding function for themselves, let alone purport to perform it using a mere preponderance-of-the-evidence standard."

Looking to *Wooden v. United States*, 595 U.S. 360, 369 (2022), the *Erlinger* Court explained that "deciding whether . . . past offenses occurred on three or more different occasions is a fact-laden task. Were the crimes 'committed close in time'? How about the '[p]roximity' of their 'location[s]'? Were the offenses 'similar or intertwined' in purpose and character? All these questions, *Wooden* observed, 'may be relevant' to determining whether the offenses were committed on one occasion or separate ones—and all require facts to be found before ACCA's more punitive mandatory minimum sentence may be lawfully deployed." *Id.* at 834 (internal citations omitted) (alterations in *Erlinger*).

The Supreme Court noted that "the sentencing court's factual finding that [the defendant's] offenses occurred on at least three separate occasions had the effect of increasing *both* the maximum and minimum sentences he faced." *Id.* at 835 (emphasis in original). The Court reasoned, *id.*: "Rather than a maximum sentence of 10 years in prison, the judge's finding left [the defendant] exposed to life in prison. Rather than a minimum penalty of no prison time, the judge's finding meant [the defendant] had to serve at least 15 years." The Court concluded that the defendant was "entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt . . . ." *Id.*

Here, the government "concedes" that, in light of *Erlinger*, "an error would have occurred because the Government did not task the jury with finding the ACCA predicate convictions took place on different occasions." ECF 139 at 4. But, the government argues that defendant "is essentially attempting to collaterally attack his conviction and sentence through a compassionate release motion . . . ." *Id.* at 3. According to the government, "the compassionate release statute is not the appropriate vehicle for challenging the validity of a sentence based on new case law. The proper avenues for such challenges are direct appeal or a motion under 28 U.S.C. § 2255." ECF 135 at 7.

And, the government contends that, because defendant "did not preserve the issue by raising it at trial or on direct appeal, the Court should apply plain error review under Rule 52(b)." ECF 139 at 3. Applying that standard, the government states, *id.* at 1: "Defendant cannot demonstrate that the *Erlinger* decision would affect his ACCA status because his predicate offenses clearly occurred on separate occasions, a fact that would be evident even under *Erlinger's* jury determination requirement." According to the government, defendant's "five prior drug-related convictions[15] that qualified as ACCA predicates . . . clearly occurred on separate occasions as they were all the subject of separate arrests and prosecutions with significant time intervals between each incident." *Id.* at 3. The government posits that the jury "could not have reasonably arrived at a different conclusion." *Id.* at 4. Therefore, the government argues that the change in the law created by *Erlinger* "did not create a gross sentencing disparity . . . ." *Id.* at 5.

Even before the amendments of November 1, 2023, in regard to motions for compassionate release, many judges in this District considered a change in the sentencing law landscape that a

---

[15] As explained earlier, Judge Quarles expressly determined that defendant had four prior drug convictions that qualified as ACCA predicates, and not five, as the government erroneously states here. *See* ECF 77 at 3.

defendant would face if prosecuted today.  *See, e.g.*, *United States v. Chandler*, GLR-05-0181, ECF 119 at 1–2 (D. Md. May 14, 2020); *United States v. Decator*, 452 F. Supp. 3d 320 (D. Md. 2020), *aff'd*, *McCoy*, 981 F.3d 271; *United States v. Laurey*, JKB-06-0586, ECF 81 at 1, 3 (D. Md. Feb. 19, 2020); *United States v. Wesley*, JKB-10-0118, ECF 73 at 1 (D. Md. Feb. 18, 2020); *United States v. Smith*, DKC-98-0252, ECF 92 at 4 (D. Md. Feb. 14, 2020); *United States v. Watts*, PJM-06-036, ECF 114 at 7 (D. Md. Feb. 6, 2020); *United States v. Thompson*, CCB-09-0128, ECF 123 at 2 (D. Md. Jan. 16, 2020).  For example, Judge Bennett of this Court has said: "[C]hanges in the sentencing law landscape are relevant to the Court's analysis of whether the Court's sentence appropriately addresses 'the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public.'"  *United States v. Johnson*, RDB-07-0153, ECF 183 at 10–11 (D. Md. Oct. 14, 2020); *see also McCoy*, 981 F.3d at 285.

Notably, in *McCoy*, 981 F.3d 271, the Fourth Circuit recognized that "the dramatic degree to which [a defendant's sentence] exceed[s] what Congress now deems appropriate" can provide an extraordinary and compelling reason for a reduction in sentence.  *Id.* at 288.  The defendants in the cases consolidated for appeal in *McCoy* were convicted of robberies and firearms violations under 18 U.S.C. § 924(c).  *Id.* at 274.  At the time of their convictions, under the practice known as "stacking," a conviction under 18 U.S.C. § 924(c) "was treated as 'second or subsequent,' triggering [a] 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case."  *Id.* at 275.  After enactment of the First Step Act, however, "the 25-year mandatory minimum applie[d] only when a prior § 924(c) conviction ar[ose] from a separate case and already . . . bec[a]me final."  *Id.* (citation and internal quotation marks omitted).  But, the change was not retroactive.

The district courts in *McCoy* granted sentence reductions in part on the basis that, under current law, the defendants would have received sentences significantly less severe than their "stacked" sentences. *Id.* at 274–75. The Fourth Circuit affirmed, holding that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *Id.* at 285–86.

Based on *McCoy*, 981 F.3d at 285–86, Judge Blake of this Court explained in *United States v. Myers*, CCB-01-188, 2021 WL 2401237, at *3 (D. Md. June 11, 2021), that a court evaluating a motion for sentence reduction based on a sentencing disparity should consider: (1) whether the sentence imposed is grossly disproportionate to a sentence the defendant would likely receive if sentenced today, signifying that the sentence is "dramatically longer than necessary or fair;" (2) whether the sentence imposed is unusually or grossly lengthy in comparison to sentences currently imposed for similar or more serious offenses; (3) the length of the sentence the defendant already has served; and (4) other personal characteristics of the defendant, which may include the defendant's relative youth at the time of the offense and their post-sentencing conduct in the BOP.

To be sure, these cases predated the amendments of November 1, 2023. But, the cases remain informative.

More recently, and significantly, in *Brown*, 78 F.4th 122, the Fourth Circuit reaffirmed that a defendant's disparate sentence "is relevant to both the 'extraordinary and compelling reasons' inquiry and the § 3553(a) factors." *Id.* at 130. Indeed, the Court determined that the district court in that case erred in its compassionate release analysis by failing to consider a defendant's disparate sentence. *Id.* at 130–31. In the Court's view, two features of the sentence it was reviewing provided extraordinary and compelling reasons for relief: the sentence's "sheer and unusual

length" in relation to sentences for more serious and violent crimes, and "the gross disparity between" the sentence "and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." *Id.* at 131.

To put defendant's sentence in context, it is worth reviewing the average sentences imposed for certain crimes. For example, for fiscal year 2022, the average national sentence imposed for drug trafficking was 78 months (6 years, 6 months); for murder, 261 months (21 years, 9 months); for firearms, 49 months (4 years, 1 month); and for kidnapping, 184 months (15 years, 4 months). *Table 15, "Sentence Imposed by Type of Crime,"* at 64, in *2022 Annual Report and Sourcebook of Federal Sentencing Statistics*, U.S. SENT'G COMM'N, https://perma.cc/JJ54-A9PC ("2022 Sourcebook"); *see also United States v. Bryant*, 95-CCB-202-3, 2020 WL 2085471, at *5 n.8 (D. Md. Apr. 30, 2020) ("According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months.") (citing *United States v. Redd*, 444 F. Supp. 3d 717, 728 (E.D. Va. 2020)).

Turning to fiscal year 2023, the average national sentence imposed for drug trafficking was 82 months (6 years, 10 months); for murder, 285 months (23 years, 9 months); for firearms, 49 months (4 years, 1 month); for robbery, 110 months (9 years, 2 months); and for kidnapping 199 months (16 years, 7 months). *Table 7, "Sentence Length by Type of Crime,"* at 11, in *Statistical Information Packet, Fiscal Year 2023, District of Maryland*, U.S. SENT'G COMM'N, https://perma.cc/SB5B-CGTA.

And, for fiscal year 2023 in the District of Maryland, the average sentence for drug trafficking was 61 months (5 years, 1 month); for murder, 310 months (25 years, 10 months); for firearms, 44 months (3 years, 8 months); for robbery, 134 months (11 years, 2 months); and for

kidnapping, 168 months (14 years). *Table 7, "Sentence Length by Type of Crime,"* at 11, in *Statistical Information Packet, Fiscal Year 2023, District of Maryland*, U.S. SENT'G COMM'N, https://perma.cc/SB5B-CGTA.

Several cases in this District also provide guidance. In *United States v. Blake*, ELH-06-394,[16] the defendant was convicted of carjacking resulting in death; conspiracy to possess a firearm in furtherance of a crime of violence; possession of a firearm in furtherance of a crime of violence; and murder resulting from possession of a firearm in furtherance of a crime of violence. *See id.*, ECF 62 (Judgment). In particular, when the defendant was seventeen years old, he participated in a carjacking in which the victim was murdered. *See id.*, ECF 123 at 3; *id.*, ECF 149 at 2. The defendant was originally sentenced to life imprisonment. *Id.*, ECF 62. But, pursuant to a joint motion by the government and the defendant in connection with the defendant's petition under 28 U.S.C. § 2255, his sentence was reduced to forty years of imprisonment. *Id.*, ECF 123, ECF 127. Then, the sentence was reduced again, to thirty years of imprisonment, pursuant to a joint motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *Id.*, ECF 165, ECF 168.

The case of *United States v. Grimes*, ELH-23-0287, is also informative. There, the defendant pleaded guilty to interference with commerce by robbery with regard to a convenience store (Count Four, 18 U.S.C. § 1951), and brandishing of a firearm in connection with a crime of violence (Count Five, 18 U.S.C. § 924(c)). The brandishing offense in Count Five concerned the robbery in Count Four. *See* ECF 24 (Indictment). The defendant stipulated to another armed robbery (Count Six) as well as to a carjacking during that robbery (Count Seven), in violation of 18 U.S.C. § 2119(1). The defendant had no prior record; he was only 25 years of age; and he

_____

[16] This case was originally assigned to Judge Nickerson. It was reassigned to me on January 29, 2016, due to the retirement of Judge Nickerson. *See* Docket.

admitted guilt. Nevertheless, despite the serious nature of the offense, the government agreed to a total sentence of 120 months of incarceration, under Fed. R. Crim. P. 11(c)(1)(C). ECF 47, ¶ 9.

In *United States v. Floyd*, CCB-16-597, Floyd was one of several defendants convicted after a 25-day trial. *See id.*, ECF 477; ECF 491. In particular, Floyd was convicted of a racketeering conspiracy that included murders and drug conspiracy. Floyd was not the shooter, however. Although the defendant's offense level and criminal history category called for a life sentence, Judge Catherine Blake imposed a total sentence of 360 months of imprisonment. *Id.*, ECF 691.

In *United States v. Antoine*, PWG-19-140, a multi-defendant case, Antoine was involved in a drug trafficking organization in Baltimore. He confessed to the intentional shooting and killing of an individual in relation to a drug conspiracy. *See id.*, ECF 349 (Plea Agreement) at 9–10. Pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C), Antoine entered a plea of guilty to one count of conspiracy to distribute controlled substances and one count of discharging a firearm resulting in death during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and (j). *Id.* Although the defendant was the person who shot the victim in the head (ECF 349 at 9), the government agreed to a term of imprisonment ranging between twenty and twenty-five years. *Id.* at 6. Antoine was twenty-five years old at sentencing. *Id.*, ECF 463 (PSR), at 3. Judge Grimm sentenced him to a total term of 270 months of imprisonment, *i.e.*, twenty-two and a half years. *Id.*, ECF 465 (Judgment).

In *United States v. Warren, et al.*, JKB-22-439, a multi-defendant case, Warren was a member of the Black Guerilla Family and participated in their affairs "through a pattern of racketeering activity that included conspiracy to distribute controlled substances, possession with intent to distribute controlled substances, robbery and murder." *See id.*, ECF 271-1 at 1. Pursuant

to a plea agreement, Warren pleaded guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). *Id.*, ECF 271 at 1. The pattern of racketeering activity included a conspiracy to murder five individuals. *Id.* at 2. The parties jointly agreed that a sentence of 396 months of imprisonment would be an appropriate disposition of the case. *See id.* at 6. But, the plea was not tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C). *See* ECF 271.

At sentencing, the defendant was thirty-two years old. *Id.*, ECF 290 (PSR), at 3. Judge Bredar sentenced him to a term of 467 months of imprisonment, *i.e.*, thirty-eight years and eleven months. *Id.*, ECF 292 (Judgment). As noted, however, Warren was implicated in five murders. In contrast, Spriggs was sentenced to thirty-seven years for an armed carjacking.

Four defendants were charged in *United States v. Whisonant, et al.*, ELH-17-191. Each pleaded guilty to the offense of conspiracy to distribute heroin. Relevant here, three of the defendants also pleaded guilty to offenses involving firearms. In particular, one defendant pleaded guilty to possession of a firearm in furtherance of a drug trafficking crime, while two other defendants pled guilty to discharging a firearm resulting in death, during and in relation to a drug trafficking crime. The murder was unexpectedly captured, in real time, during an authorized wiretap. One defendant received a total sentence of 360 months' imprisonment (*id.*, ECF 180), another received a sentence of 420 months (*id.*, ECF 163), and still another received a sentence of 480 months of incarceration. *See id.*, ECF 184. However, the sentence of 360 months was subsequently reduced to 295 months by Order of June 26, 2023, pursuant to § 3582(c)(1)(A)(i). *See* ECF 335.

The cases set forth above suggest that, in the context of more current sentences, the length of defendant's sentence is more akin to the kind of sentence meted out in this District for murder. As explained, *supra*, for fiscal year 2023, the average sentence for murder in this District was 25

years and 10 months. And, the national average sentence for a murder conviction in fiscal year 2022 was 21 years and 9 months, and 23 years and 9 months in fiscal year 2023. Moreover, I am mindful that, in light of *Erlinger*, defendant was not properly determined to be an armed career criminal.

As the Supreme Court explained in *Erlinger*, "the sentencing court's factual finding that [the defendant's] offenses occurred on at least three separate occasions had the effect of increasing *both* the maximum and minimum sentences he faced." *Erlinger*, 602 U.S. at 835 (emphasis in original). Absent a unanimous jury finding, beyond a reasonable doubt, that defendant's prior felony drug offenses occurred on separate occasions, the sentencing court was not permitted to sentence defendant to more than ten years of incarceration for the § 924(g) offense; and the ACCA's fifteen-year mandatory minimum would not have applied.

*United States v. Clowers*, No. 5:92-CR-00082-TES-CHW-2, 2024 WL 3461752, at *1 (M.D. Ga. July 18, 2024), is instructive. There, the defendant was convicted of various offenses in connection with a crack cocaine trafficking conspiracy. He was subject to a statutory mandatory minimum sentence of life imprisonment under 21 U.S.C. § 848(a), and he was sentenced accordingly. *Id.* At sentencing, the judge "made a finding as to the quantity of drugs based on evidence provided by the case agent at [the defendants'] sentencing hearing, and no jury ever passed on the question." *Id*. at *5. In considering a motion for compassionate release, the court said: "Here, the intervening change of law rests with the Sixth Amendment right to a jury finding of any fact that increases a mandatory minimum sentence." *Id*. If the court were sentencing the defendant today, it "would only be faced with sentencing him to the statutory minimum of 20 years under 21 U.S.C. § 848(a)." The court added that "the drug quantity finding by the judge, which would now be found unconstitutional under *Alleyne*, raised his mandatory minimum from a 20-

year sentence to one for life. This is a disparity that is glaringly noticeable." *Id.* Accordingly, the court concluded that the defendant had established an extraordinary and compelling reason for compassionate release. *Id.* at *6. And, after determining that the sentencing factors in 18 U.S.C. § 3553(a) weighed in the defendant's favor, the court reduced the defendant's sentence from life to time served. *Id.* at *7.

Spriggs should not have been subjected to a mandatory minimum sentence of fifteen years for Count Three. I conclude that the change in sentencing law, which affects Count Three, constitutes an "extraordinary and compelling" reason to reduce defendant's sentence.

## C.

I have concluded that defendant is eligible for compassionate release. But, that does not end the inquiry. I must next consider the sentencing factors enumerated in 18 U.S.C. § 3553(a), to determine if compassionate release is appropriate.

The government argues that the sentencing factors "weigh heavily" against defendant's release. ECF 135 at 1. According to the government, "the nature and circumstances of Defendant's offenses were extremely serious." *Id.* at 8. In particular, the government posits, *id.*: "The use of a gun to commit a violent crime poses a severe danger to the community and creates a significant risk of injury or death." And, the government contends that defendant has an "extensive criminal history, including numerous prior felony drug convictions." *Id.* "This serious criminal history," says the government, "underscores the need for a lengthy sentence to protect the public, promote respect for the law, and deter Defendant from further offenses." *Id.* at 9.

There is no doubt that defendant's underlying crimes were serious. He brandished a firearm in order to steal a motor vehicle from the victim. Fortunately, defendant did not discharge the firearm and the victim was not physically injured.

Moreover, defendant's criminal history is quite significant and very concerning. He has been convicted of numerous offenses, including four felony drug offenses. ECF 116, ¶¶ 53, 56, 59, 65.

Nonetheless, it is notable that defendant has never been convicted of any other crime of violence. Moreover, many of defendant's sentences were short and/or concurrent. It appears that the longest sentence he served was about six years, from August 2001 to August 2007. Although defendant's prior periods of incarceration did not deter him from committing more crimes, the period of incarceration he has served in this case is already more than twice as long as any prior sentence.

Rehabilitation alone does not warrant a defendant's immediate release. *United States v. Davis*, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022). But, rehabilitation efforts after sentencing must be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct).

In other words, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v.*

*Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 334 n.3. The court must "at least weigh the [defendant's] conduct in the years since the initial sentencing." *McDonald*, 986 F.3d at 412; *see Martin,* 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts). Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

Neither defendant nor the government has provided the Court with defendant's BOP disciplinary records. Given that the government steadfastly maintains that defendant should not be released, I shall assume that its failure to submit defendant's BOP records means that defendant has incurred no significant infractions while in BOP custody.

In a letter to the Court of October 19, 2024, defendant states that while incarcerated he obtained his GED and earned several college credits. ECF 140 at 1; *see also* ECF 127-4 at 1 (October 9, 2018, certificate provided to defendant for obtaining his GED). Defendant has submitted course completion certificates for 21 educational courses. ECF 127-4 at 2–22; *see also* ECF 127-3 (BOP "Individualized Needs Plan – Program Review" stating that Spriggs earned his GED in BOP custody and that he has completed 32 educational courses). These are noteworthy accomplishments.

In the Motion, defendant also expresses remorse. He states, ECF 127 at 6:

I confess my faults. I want to deeply apologize to the victim of this case[.] My behavior was unjustifiable and after years of therapy I have revamp[ed] my thought process. I do have victim empathy[.] I truly regret this crime I perpetrated. Your Honor I have learned the purpose of change and I am prepared to be a productive member of society upon release!"

Defendant posits that his "mind is not the same as it was 15 years ago" and that he has "no plans to commit crimes . . . ." ECF 140 at 2. Defendant's father states that defendant "know[s] what he done [sic] was wrong, he talks about it all the time." ECF 131 at 2.

Spriggs avers that, upon his release, he is "prepared to be an assist [sic] to society and mentor to the inner-city youth that are troubled because" he is "obligated to break this cycle." ECF 127 at 5. Spriggs's father states, ECF 131 at 2: "[Spriggs] has a strong support system, I will back him up, he wants to work[,] stay out of trouble, thank the lord, I believe he finally got it together. [H]e will have a roof over his head and a place to live."

The Court is also mindful that some of defendant's incarceration occurred in the midst of a global pandemic that "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, 456 F. Supp. 3d 557, 563 (S.D.N.Y. 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary").

Notably, the First Step Act "does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons.'" *United States v. Braxton*, JKB-09-478, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020). Accordingly, the Court's decision need not be confined either to immediate release or leaving the existing sentence intact. The statutory text of the First Step Act allows courts to "reduce the term of imprisonment" upon a finding of "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A).

Numerous district courts in this Circuit and elsewhere have granted sentence reductions without immediate release. *See, e.g.*, *United States v. Johnson*, RDB-07-0153, 2020 WL 6063733, at \*5 (D. Md. Oct. 14, 2020) (reducing sentence from 360 months to 300 months); *Braxton*, 2020 WL 4748536, at \*5 (reducing sentence from 246 months to 168 months); *United States v. Marks*, 455 F. Supp. 3d 17, 37–38 (W.D.N.Y. 2020) (reducing sentence from 40 years to 20 years); *United States v. Arey*, Crim. No. 5:05-00029, 461 F. Supp. 3d 343, 2020 WL 2464796 (W.D. Va. May 13, 2020) (reducing sentence but denying immediate release); *United States v. Day*, 474 F. Supp. 3d 790 (E.D. Va. 2020) (same); *see also United States v. Zullo*, 976 F.3d 228, 327 (2d Cir. 2020) ("It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence . . . .").

As I see it, defendant's immediate release is not warranted. His crimes in the instant case were extremely serious and his criminal record is disturbing. As the government put it at sentencing, defendant has spent "his career as a drug dealer . . . ." ECF 77 at 11. Indeed, the PSR indicates that, at the age of 32, defendant had "no employment history." ECF 116 at 22.

On the other hand, defendant appears to have made strides towards rehabilitation. Moreover, he has already served a sentence far longer than any prior sentence he has served. And, the challenges of imprisonment were exacerbated due to COVID-19. Perhaps most important, and as discussed, since the time of defendant's sentencing, the law has changed in a significant way with regard to the armed career criminal determination. Put simply, defendant's armed career criminal designation would now be deemed unlawful, and therefore he would not be subject to a mandatory fifteen-year sentence for Count Three.

I conclude that defendant has established grounds for compassionate release. And, I am satisfied that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing defendant's total sentence from 444 months of imprisonment (37 years) to a total of 300 months of imprisonment (25 years), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

In particular, I shall leave the sentence for Count One unchanged. I shall reduce defendant's sentence as to Count Three from fifteen years to three years, to run consecutive to the sentence imposed for Count One. And, I shall reimpose the sentence of eighty-four months for Count Two, to run consecutive to all other sentences.

### IV. Conclusion

For the foregoing reasons, I shall grant defendant's Motion for Compassionate Release (ECF 127), in part. Specifically, I shall reduce defendant's total sentence from 444 months to 300 months of imprisonment (25 years).

An Order follows, consistent with this Memorandum Opinion. And, an Amended Judgment shall issue.


Date: December 20, 2024

_____/s/_____
Ellen Lipton Hollander
United States District Judge